# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| CRAIG CUNNINGHAM, | ) | Case No. 1:17-cv-01216 |
| Plaintiff, | ) | |
| | ) | Honorable John Robert Blakey |
| vs. | ) | |
| | ) | |
| HEALTH PLAN INTERMEDIARIES | ) | **FIRST AMENDED COMPLAINT** |
| HOLDINGS, LLC dba HEALTH | ) | **FOR VIOLATIONS OF:** |
| INSURANCE INNOVATIONS; | | |
| NATIONAL HEALTH HUB, LLC; | ) | |
| CIGNA CORPORATION; COST | ) | 1. NEGLIGENT VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. §227(b) |
| CONTAINMENT GROUP, INC.; | ) | |
| LOYAL AMERICAN LIFE | ) | |
| INSURANCE COMPANY; | | |
| ALLIANCE FOR CONSUMERS USA | ) | 2. WILLFUL VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. §227(b) |
| INC.; SHIRLEY GARCIA; ERIC | ) | |
| BANKS; GIP TECHNOLOGY, INC.; | ) | |
| PAUL MADUNO; ADA MADUNO; | ) | 3. NEGLIGENT VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. §227(c) |
| ASENTRA HEALTH SOLUTIONS, | ) | |
| LLC; AXIS INSURANCE | ) | |
| COMPANY; AMALGAMATED LIFE | ) | 4. WILLFUL VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. §227(c) |
| INSURANCE COMPANY; | ) | |
| BROADSPIRE, INC; CHAMPION | ) | |
| LIFE INSURANCE COMPANY; | | |
| CHUBB GROUP INSURANCE | ) | **DEMAND FOR JURY TRIAL** |
| COMPANY; FEDERAL INSURANCE | | |
| COMPANY; UNIFIED LIFE | ) | |
| INSURANCE COMPANY; | ) | |
| NATIONAL CONGRESS OF | | |
| EMPLOYERS, INC; MEDSENSE | ) | |
| GUARANTEE ASSOCIATION; and | ) | |
| DOES 1-100 | | |
| Defendant. | | |

Plaintiff CRAIG CUNNINGHAM ("Plaintiff") alleges the following upon information and belief based upon personal knowledge:

## NATURE OF THE CASE

1.  Plaintiff brings this action seeking damages and any other available legal or equitable remedies resulting from the illegal actions of: HEALTH PLAN INTERMEDIARIES HOLDINGS, LLC dba HEALTH INSURANCE INNOVATIONS; NATIONAL HEALTH HUB, LLC; CIGNA CORPORATION; COST CONTAINMENT GROUP, INC.; LOYAL AMERICAN LIFE INSURANCE COMPANY; ALLIANCE FOR CONSUMERS USA INC.; SHIRLEY GARCIA; ERIC BANKS; GIP TECHNOLOGY, INC.; PAUL MADUNO; ADA MADUNO; ASENTRA HEALTH SOLUTIONS, LLC; AXIS INSURANCE COMPANY; AMALGAMATED LIFE INSURANCE COMPANY; BROADSPIRE, INC; CHAMPION LIFE INSURANCE COMPANY; CHUBB GROUP INSURANCE COMPANY; FEDERAL INSURANCE COMPANY; UNIFIED LIFE INSURANCE COMPANY; NATIONAL CONGRESS OF EMPLOYERS, INC; MEDSENSE GUARANTEE ASSOCIATION ("Defendants"), in negligently, knowingly, and/or willfully contacting Plaintiff on Plaintiff's cellular telephone in violation of the Telephone Consumer Protection Act, *47. U.S.C. § 227 et seq.* ("TCPA"), thereby invading Plaintiff's privacy.

## JURISDICTION & VENUE

2.  Jurisdiction is proper under *28 U.S.C. § 1331* because Plaintiff alleges violations of federal law, in particular the Telephone Consumer Protection Act, *47 U.S.C. § 227 et seq.*

3.  Venue is proper in the United States District Court for the Northern

District of Illinois pursuant to *18 U.S.C. 1391(b)* and *18 U.S.C. § 1441(a)* because all Defendants do business within the State of Illinois, and Defendants AXIS and MEDSENSE have their principal place of business or are incorporated within Cook County.

## **PARTIES**

4.    Plaintiff, CRAIG CUNNINGHAM ("Plaintiff"), is a natural person residing in Nashville, Tennessee and is a "person" as defined by *47 U.S.C. § 153 (39)*.

5.    Defendant HEALTH PLAN INTERMEDIARIES HOLDINGS, LLC, dba HEALTH INSURANCE INNOVATIONS ("HPIH") is a Florida corporation incorporated in Delaware, and is a "person" as defined by *47 U.S.C. § 153 (39)*.

6.    Defendant NATIONAL HEALTH HUB, LLC ("NHH") is a Florida corporation, and is a "person" as defined by *47 U.S.C. § 153 (39)*.

7.    Defendant AXIS INSURANCE COMPANY ("AXIS") is an Illinois corporation, and is a "person" as defined by *47 U.S.C. § 153 (39)*.

8.    Defendant MEDSENSE GUARANTEE ASSOCIATION ("MEDSENSE") is an Illinois corporation, and is a "person" as defined by *47 U.S.C. § 153 (39)*.

9.    Defendant CIGNA CORPORATION ("CIGNA") is a Connecticut corporation incorporated in Delaware, and is a "person" as defined by *47 U.S.C. § 153 (39)*.

10.    Defendant SHIRLEY GARCIA is a natural person residing in the state of Florida.

11.     Defendant ERIC BANKS is a natural person residing in the state of Florida.

12.     Defendant LOYAL AMERICAN LIFE INSURANCE COMPANY ("LOYAL AMERICAN") is a Texas corporation, and is a "person" as defined by *47 U.S.C. § 153 (39)*.

13.     Defendant ASENTRA HEALTH SOLUTIONS, LLC ("ASENTRA") is a Hawaii corporation, and is a "person" as defined by *47 U.S.C. § 153 (39)*.

14.     Defendant ALLIANCE FOR CONSUMERS USA, INC. ("ALLIANCE") is a Nebraska corporation, and is a "person" as defined by *47 U.S.C. § 153 (39)*.

15.     Defendant GIP TECHNOLOGY, INC. ("GIP") is a California corporation, and is a "person" as defined by *47 U.S.C. § 153 (39)*.

16.     Defendant ADA MADUNO is a natural person and an officer of Defendant GIP, residing in the state of California.

17.     Defendant PAUL MADUNO is a natural person and an officer of Defendant GIP, residing in the state of California.

18.     Defendant NATIONAL CONGRESS OF EMPLOYERS, INC. ("NCE") is a Delaware corporation, and is a "person" as defined by *47 U.S.C. § 153 (39)*.

19.     Defendant AMALGAMATED LIFE INSURANCE COMPANY ("ALIC") is a New York corporation, and is a "person" as defined by *47 U.S.C. § 153 (39)*.

20.     Defendant CHUBB GROUP INSURANCE COMPANY

("CHUBB") is a New Jersey corporation, and is a "person" as defined by *47 U.S.C. § 153 (39)*.

21.     Defendant     UNIFIED     LIFE     INSURANCE     COMPANY ("UNIFIED") is a Vermont corporation, and is a "person" as defined by *47 U.S.C. § 153 (39)*.

22.     Defendant FEDERAL INSURANCE COMPANY ("FEDERAL") is a New Jersey corporation, and is a "person" as defined by *47 U.S.C. § 153 (39)*.

23.     Defendant BROADSPIRE, INC. ("BROADSPIRE") is a Delaware corporation, and is a "person" as defined by *47 U.S.C. § 153 (39)*.

24.     The above named Defendants, and its subsidiaries and agents, are collectively referred to as "Defendants."  The true names and capacities of the Defendants sued herein as DOE DEFENDANTS 1 through 10, inclusive, are currently unknown to Plaintiff, who therefore sues such Defendants by fictitious names.  Each of the Defendants designated herein as a DOE is legally responsible for the unlawful acts alleged herein.  Plaintiff will seek leave of Court to amend the Complaint to reflect the true names and capacities of the DOE Defendants when such identities become known.

25.     Plaintiff is informed and believes that at all relevant times, each and every Defendant was acting as an agent and/or employee of each of the other Defendants and was acting within the course and scope of said agency and/or employment with the full knowledge and consent of each of the other Defendants. Plaintiff is informed and believes that each of the acts and/or omissions complained of herein was made known to, and ratified by, each of the other Defendants.

///

## **FACTUAL ALLEGATIONS**

26.     Defendants rely on a series of third parties ("Insurance Sales Agents") in an attempt to avoid liability for their repeated and willful violations of the Telephone Consumer Protection Act.

27.     Defendants maintain control over their agents' actions, both as to telemarketing and other activities, including but not limited to:

    a.  Requiring their agents to maintain an insurance policy insuring Defendants for the actions of the agents;

    b.  Communicating regularly with one another via email regarding performance and telemarketing strategies;

    c.  Coordinating and sharing telemarketing scripts; and

    d.  Actively marketing/soliciting each other's products to potential customers.

28.     Defendants maintain the right to control the content of their agents' advertising.

29.     Defendants exercised these rights during the course of their relationship with each and every Co-defendant.

30.     This network of agents carried out core business functions of each and every defendant, by marketing soliciting not just their own products and services, but the products and services of each and every other Defendant.

31.     As agents of one another, each and every defendant is directly responsible for the actions of every other Defendant, including all improper telephone calls placed by Defendants, in marketing/soliciting Defendants' products.

32.    Each and every Defendant also ratified the illegal actions of every other defendant by knowingly accepting the benefits of each Defendant's activities by accepting applications and customers from each other.  Each Defendant's products were marketed/solicited on each call to potential customers, showing this intent to ratify any benefits received from each call.

33.    Defendants also transferred valuable customer information to one another based on the results of these telemarketing calls.

34.    Through this ratification, each and every Defendant is vicariously liable for the actions of each and every Co-defendant.

35.    Beginning in or around October, 2016, Defendants contacted Plaintiff on Plaintiff's cellular telephone number ending in -1977, in an attempt to solicit Plaintiff to purchase Defendants' insurance services.

36.    Defendants continued to numerously call Plaintiff's cellular telephone in excess of one hundred (100) times, continuing through February, 2017.

37.    Defendants used an "automatic telephone dialing system", as defined by *47 U.S.C. § 227(a)(1)* to place their calls to Plaintiff seeking to solicit their services.

38.    When Plaintiff would answer these calls, there would be a long pause before a prerecorded message began to play, attempting to solicit Defendants' insurance services.  This system involved a call center agent clicking on prerecorded messages to give the opening message and reply to Plaintiff's responses.  This is known in industry jargon as an "Avatar" type system.

39.    The prerecorded message played when Plaintiff answered the phone

was: "Hi, my name is Michael and I'm calling from the National Health Insurance Enrollment Center. The reason for me call is regarding your previous interest in insurance. We can help you find some affordable health care with benefits that include doctors, hospitals, even emergency room visits. Do you have a few minutes to see what plans are available to you?"

40.     At no point during the call did the agent state the real name of the person or entity calling, or on whose behalf the calls were being placed. The National Health Insurance Enrollment Center is not a trade name, legal name, or dba of any Defendant, and the originating phone number was not a real working number.

41.     Plaintiff had never expressed any interest in health insurance, as he already receives health insurance for life through the VA at no cost to himself.

42.     The numerosity and pattern of calls received by Plaintiff was is also indicative of an automatic telephone dialing system. Plaintiff received a high volume of incoming calls from Defendants, sometimes even receiving multiple calls within a single minute.

43.     Products from each individual Defendant were mentioned by each caller, showing that each and every Defendant is an agent of each and every other Defendant. In addition, each of the Defendants' names appeared on the offer paperwork sent to Plaintiff as a result of these calls. These facts indicate that each and every Defendant has actual authority from each other Defendant to act on their behalf as their agent, and is therefore each is liable for the actions of every Defendant.

44.     This relationship between Defendants is further shown by the fact that each Defendant used the information gathered by any other Defendant on a

single phone call to attempt to solicit its own products to Plaintiff by telephone and mail.

45.     Defendants contacted or attempted to contact Plaintiff from multiple different telephone numbers.

46.     Defendant's calls constituted calls that were not for emergency purposes as defined by *47 U.S.C. § 227(b)(1)(A)*.

47.     Defendant's calls were placed to telephone number assigned to a cellular telephone service for which Plaintiff incurs a charge for incoming calls pursuant to *47 U.S.C. § 227(b)(1)*.

48.     During all relevant times, Defendant did not possess Plaintiff's "prior express consent" to receive calls using an automatic telephone dialing system or an artificial or prerecorded voice on his cellular telephone pursuant to *47 U.S.C. § 227(b)(1)(A)*.

49.     Additionally, based off the pattern and content of the calls, Plaintiff alleges that Defendants violated the terms of an internal do-not-call list for telemarketing purposes in violation of *47 U.S.C. § 227(c)*, which incorporates the provisions of *47 C.F.R. 64.1200(d)*.

50.     Plaintiff mailed a letter to Defendant HPIH expressing that Defendants did not have Plaintiff's consent to contact him.  HPIH sent an email to the other Defendants as its agents on November 2, 2016, instructing them to add Plaintiff's phone number ending in -1977 to their internal Do Not Call Lists. Despite this, Defendants continued to call Plaintiff's cellular phone to solicit services.  Some of these calls were also for the purpose of asking Plaintiff why they were told not to call Plaintiff's number, a clear attempt to get their foot in the door to continue soliciting products to Plaintiff, or at the very least, dual purpose

calls that carried a solicitation purpose.

51.    Plaintiff received a call from Defendants just two days after being told not to call Plaintiff, and attempted to solicit insurance.

52.    By instructing the other Defendants not to call Plaintiff in this fashion, HPIH has shown that each and every Defendant had actual authority to call on behalf of HPIH and act as its agent.

53.    Even after filing a lawsuit against Defendants in a different jurisdiction and serving Defendants with notice, Plaintiff continued to receive multiple calls from Defendants.

54.    Defendants GIP, Paul Maduno, and Ada Maduno ("Maduno Defendants") all operate a revenue sharing scheme designed around providing anonymity services for illegal telemarketers and all Defendants make illegal calls with the facilitation, direct payments from, and support of GIP.

55.    The Maduno Defendants own over 700,000 phone numbers which are given away to telemarketers such as defendants.

56.    Each time a phone call is placed that has Caller ID available, the phone company of the recipient performs a look-up in a database that holds caller ID names and numbers.  Each time there is a retrieval from this database, the originating phone company (in this case, GIP) receives compensation in the form of DIP fees.

57.    Since GIP makes money from these DIP fees for every telephone call placed, they pay Defendants fees for each call they make.  Thus these fees are shared from the Maduno Defendants to all Defendants.

58.    Importantly, CNAM services prevent the telecom service provider

from being discovered. This makes it impossible for people such as Plaintiff to make a complaint to Defendant's telecom provider that their customers are placing illegal calls, and provides a further layer of security for Defendants.

59. These CNAM services have very little legitimate purpose, and are almost exclusively used by companies such as Defendants when making illegal telemarketing calls.

60. In this case, Defendants use the CNAM service called "CallerID4U," which is a creation of the Maduno Defendants. From January 1, 2012 through November 30, 2012 there were over 138,000 complaints TO THE Federal Trade Commission about telephone calls from numbers registered to CallerID4U.

61. The Maduno defendants profited directly from each and every call placed to Plaintiff that were made on behalf of all Defendants.

62. The Maduno Defendants are directly liable for the calls in question, or in the alternative are vicariously liable for the calls in question, as the calls were made for their benefit.

63. The Maduno Defendants ratified the actions of Defendants by paying them commissions from the DIP fees received from making these illegal calls.

64. As each and every Defendant stands to profit and benefit from Plaintiff's enrollment in their services, and simply from placing the calls themselves, each and every Defendant is vicariously liable for these calls as a "Seller" as defined by the TCPA and FCC, even if they did not directly place the calls to Plaintiff.

65. The individual corporate officers and managers of each of the corporate entities are liable for the calls placed on behalf of or for their benefit.

They are personally liable for the TCPA damages as they had direct, personal participation in causing the illegal calls to be placed, as well as directly authorizing the illegal calls.

66.     The individual corporate officers also failed to implement appropriate policies or procedures designed to comply with the TCPA, which makes them personally liable for the illegal calls made on their behalf or for their benefit.

67.     These phone calls violated the TCPA in two ways: (1) by placing multiple automated telephone calls to Plaintiff's cell phone in violation of *47 U.S.C. 227(b)*, and (2) by not conforming to the requirements of *47 U.S.C. 227(c)(5)* and the FCC's rulemaking authority under *47 C.F.R. 64. 1200(d)*, which requires Defendants to have a written policy for maintaining a Do Not Call list, a failure to train agents and personnel engaged in telemarketing to consumers on the Do Not Call list, and the failure to identify the party making the call or the entity for which the call is being placed.

68.     Each and every defendant is jointly liable to Plaintiff for damages, and each product offered to Plaintiff constitutes a separate cause of action for which Defendants are liable.

69.     Plaintiff alleges direct, vicarious, joint and several liability for each and every defendant and the officers of each Defendant.

70.     Plaintiff has suffered actual damages in the form of enrollment fees charged by Defendants.

71.     Through these actions, Plaintiff suffered an invasion of a legally protected interest in privacy, which is specifically addressed and protected by the TCPA.

72.     Defendants' calls forced Plaintiff and class members to live without the utility of their cellular phones by forcing Plaintiff to silence his cellular phone and/or block incoming numbers.  Additionally, Defendants' actions has caused Plaintiff to suffer significant mental and emotional harm, including but not limited to annoyance, frustration, and anger, loss of cell phone and reduction of battery life on his phone due to the calls.

## FIRST CAUSE OF ACTION

### Negligent Violations of the Telephone Consumer Protection Act

### 47 U.S.C. §227(b)

73.     Plaintiff repeats and incorporates by reference into this cause of action the allegations set forth in all paragraphs above.

74.     The foregoing acts and omissions of Defendant constitute numerous and multiple negligent violations of the TCPA, including but not limited to each and every one of the above cited provisions of *47 U.S.C. § 227(b)*.

75.     As a result of Defendant's negligent violations of *47 U.S.C. § 227(b)*, Plaintiff and the Class Members are entitled an award of $500.00 in statutory damages, for each and every violation, pursuant to *47 U.S.C. § 227(b)(3)(B)*.

76.     Plaintiff and the Class members are also entitled to and seek injunctive relief prohibiting such conduct in the future.

///

///

///

///

///

## SECOND CAUSE OF ACTION

### Knowing and/or Willful Violations of the Telephone Consumer Protection Act

### 47 U.S.C. §227 et seq.

77.     Plaintiff repeats and incorporates by reference into this cause of action the allegations set forth in all paragraphs above.

78.     The foregoing acts and omissions of Defendant constitute numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each and every one of the above cited provisions of *47 U.S.C. § 227(b)*.

79.     As a result of Defendant's knowing and/or willful violations of *47 U.S.C. § 227(b)*, Plaintiff and the Class members are entitled an award of $1,500.00 in statutory damages, for each and every violation, pursuant to *47 U.S.C. § 227(b)(3)(B)* and *47 U.S.C. § 227(b)(3)(C)*.

80.     Plaintiff and the Class members are also entitled to and seek injunctive relief prohibiting such conduct in the future.

## THIRD CAUSE OF ACTION

### Negligent Violations of the Telephone Consumer Protection Act

### 47 U.S.C. §227(c)

81.     Plaintiff repeats and incorporates by reference into this cause of action the allegations set forth in all paragraphs above.

82.     The foregoing acts and omissions of Defendant constitute numerous and multiple negligent violations of the TCPA, including but not limited to each and every one of the above cited provisions of *47 U.S.C. § 227(c)*.

83. As a result of Defendant's negligent violations of *47 U.S.C. § 227(c)*, Plaintiff and the Class Members are entitled an award of $500.00 in statutory damages, for each and every violation, pursuant to *47 U.S.C. § 227(c)(5)*.

84. Plaintiff and the Class members are also entitled to and seek injunctive relief prohibiting such conduct in the future.

## FOURTH CAUSE OF ACTION

### Knowing and/or Willful Violations of the Telephone Consumer Protection Act

### 47 U.S.C. §227(c)

85. Plaintiff repeats and incorporates by reference into this cause of action the allegations set forth in all paragraphs above.

86. The foregoing acts and omissions of Defendant constitute numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each and every one of the above cited provisions of *47 U.S.C. § 227(c)*.

87. As a result of Defendant's knowing and/or willful violations of *47 U.S.C. § 227(c)*, Plaintiff and the Class members are entitled an award of $1,500.00 in statutory damages, for each and every violation, pursuant to *47 U.S.C. § 227(c)(5)*.

88. Plaintiff and the Class members are also entitled to and seek injunctive relief prohibiting such conduct in the future.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests judgment against Defendant for the following:

## FIRST CAUSE OF ACTION

### Negligent Violations of the Telephone Consumer Protection Act

### 47 U.S.C. §227(b)

- As a result of Defendant's negligent violations of *47 U.S.C. §227(b)(1),* Plaintiff and the Class members are entitled to and request $500 in statutory damages, for each and every violation, pursuant to *47 U.S.C. 227(b)(3)(B).*

- Any and all other relief that the Court deems just and proper.

## SECOND CAUSE OF ACTION

### Knowing and/or Willful Violations of the Telephone Consumer Protection Act

### 47 U.S.C. §227(b)

- As a result of Defendant's willful and/or knowing violations of *47 U.S.C. §227(b)(1)*, Plaintiff and the Class members are entitled to and request treble damages, as provided by statute, up to $1,500, for each and every violation, pursuant to *47 U.S.C. §227(b)(3)(B)* and *47 U.S.C. §227(b)(3)(C).*

- Any and all other relief that the Court deems just and proper.

## THIRD CAUSE OF ACTION

### Negligent Violations of the Telephone Consumer Protection Act

### 47 U.S.C. §227(c)

- As a result of Defendant's negligent violations of *47 U.S.C.*

*§227(c)(1),* Plaintiff and the Class members are entitled to and request $500 in statutory damages, for each and every violation, pursuant to *47 U.S.C.  227(c)(5).*

- Any and all other relief that the Court deems just and proper.

## FOURTH CAUSE OF ACTION

**Knowing and/or Willful Violations of the Telephone Consumer Protection Act**

**47 U.S.C. §227(c)**

- As a result of Defendant's willful and/or knowing violations of *47 U.S.C. §227(c)(1)*, Plaintiff and the Class members are entitled to and request treble damages, as provided by statute, up to $1,500, for each and every violation, pursuant to *47 U.S.C. §227(c)(5)*.

- Any and all other relief that the Court deems just and proper.

89.    Pursuant to the Seventh Amendment to the Constitution of the United States of America, Plaintiff is entitled to, and demands, a trial by jury.

RESPECTFULLY SUBMITTED June 19, 2017,

By: /s/Todd M. Friedman, Esq.

Attorney for Plaintiff

Todd M. Friedman, Esq.

Illinois Attorney No. 6276496

Law Offices of Todd M. Friedman, P.C.

111 West Jackson Blvd., Suite 1700

Chicago, IL 60604

Phone: (312) 212-4355

Fax: (866) 633-0228

tfriedman@toddflaw.com

**FIRST AMENDED COMPLAINT**

Filed electronically on this 19th day of June, 2017, with:

United States District Court CM/ECF system

Notification sent electronically on this 19th day of June, 2017, to:

Honorable Judge John Robert Blakey

United States District Court

Northern District of Illinois

Timothy A. Hudson

TABET DiVITO ROTHSTEIN

thudson@tdrlawfirm.com

Attorney for:

National Health Hub, LLC

Alliance for Consumers USA, Inc.

Health Plan Intermediaries Holdings, LLC

Constance Mann

LAW OFFICES OF CONSTANCE MANN

Attorney for:

GIP Technology, Inc.

Ada Maduno

Paul Maduno

Arsalan Ali Nayani

Peter E. Pederson, Jr.

HINSHAW & CULBERTSON LLP

anayani@hinshawlaw.com

ppederson@hinshawlaw.com

Attorneys for Cigna Corporation


James V. Noblett

Allyson Elena Poulos

Raj Niranjan Shah

DLA PIPER LLP

James.noblett@dlapiper.com

Allyson.poulos@dlapiper.com

Raj.shah@dlapiper.com

Attorneys for Amalgamated Life Insurance Company



<u>s/Todd M. Friedman, Esq.</u>

Todd M. Friedman